## WALTER W. UPHAM *vs.* JAMES WYMAN.

If a portion of trust funds, the income of which is to be paid to a married woman for her life, and after her death to her husband for his life, with remainder over of the principal fund, is lent to the husband upon his note payable with interest semi-annually, and it is agreed by all the parties that the trustee shall not collect the interest, in order to avoid the trouble of receiving the same from the husband and paying it over to the wife, and in pursuance of this agreement the trustee omits for more than six years to collect the interest, the note is not thereby barred by the statute of limitations; but the trustee may set off the same in equity, after the wife's death, against a claim of the husband for the income.

BILL IN EQUITY to compel a trustee to pay to the plaintiff the income of certain trust funds.

The bill alleged that on the 2d of September 1837 Martha F. Wyman, in contemplation of marriage with the plaintiff, executed an indenture, a copy of which was annexed, by which she conveyed to Elisha Parks certain real and personal property in trust, to pay the income thereof to her during her life, and in case of her marriage with the plaintiff and of her death to pay the same to the plaintiff during his life, and after his death to pay and transfer the principal fund to their children, if any, or otherwise to her heirs at law; with authority in the trustee, upon the joint application of the plaintiff and said Martha, to invest certain of the funds in personal estate, as should be requested by them; that in 1847 the trustee named in the indenture resigned his trust, and the defendant was appointed as his successor, and accepted the trust; that in September 1859 the wife of the plaintiff died, leaving no issue; and that since that time the defendant had only paid over to the plaintiff a portion of the income of said trust fund received by him, and wrongfully refused to pay to him the residue. The prayer was that the defendant might answer upon oath, that an account might be taken, and that he might be decreed to pay what should appear to be due to the plaintiff, and for other and further relief.

The answer, after admitting the principal facts alleged in the bill, averred that on the 8th of December 1847 the plaintiff and

his wife requested the defendant, in writing, to lend to the plaintiff from the trust fund the sum of $2633.31, upon his note, with his mother's indorsement; that thereupon on the same day he complied with said request, and received from the plaintiff his promissory note of that date, indorsed by his mother, for said sum, payable on demand with interest semi-annually; that, "by an understanding and agreement between himself and the plaintiff and said Martha, and to avoid the trouble of receiving the interest upon said note semi-annually from said plaintiff, and paying the same back again to said Martha or said plaintiff upon her order, as was the usual custom as to the other income, he did not collect the interest upon said note, and never has collected the same;" that the plaintiff's mother has ceased, as he believes, to be liable upon the note, no notice having been given to her as indorser; and that in May 1861 he ceased to pay to the plaintiff any of the income, intending to apply the same, if he legally might do so, to the satisfaction of said note.

The case came up on the bill and answer, and the bill was dismissed. The plaintiff appealed to the whole court.

*C. P. Hinds*, for the plaintiff, cited Story Eq. Pl. § 751; 2 Story on Eq. § 1520; *Johnson* v. *Ames*, 11 Pick. 182; *Farnam* v. *Brooks*, 9 Pick. 212; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90, 114; *Townshend* v. *Townshend*, 1 Bro. C. C. 550.

*C. A. Welch*, for the defendant, cited *Fuller* v. *Knight*, 6 Beav. 205; *Livingston* v. *Harris*, 11 Wend. 329; *Sturgis* v. *Champneys*, 5 Myl. & Cr. 97; *Plowden* v. *Thorpe*, 7 Cl. & Fin. 137, 161, 162; *Price* v. *Dyer*, 17 Ves. 356; *Brooks* v. *Wheelock*, 11 Pick. 438; *Phillipson* v. *Gatty*, 7 Hare, 516; *Hipkins* v. *Newton*, 9 Law Journ. (Ch.) 227; 1 Story on Eq. §§ 64 *e*, 301; 2 Ib. § 770; Com. Dig. Chancery, 3 F 3.

BIGELOW, C. J. We think it very clear that, on the facts averred in the bill and answer, the plaintiff is not entitled to relief in equity. His right to the interest and income on the trust property in the hands of the defendant under the marriage settlement between himself and his deceased wife is indisputable; and, but for the facts set out in the answer, he might well maintain this bill for a discovery and account, and the payment

of the balance remaining in the hands of the defendant. **But** it appears by the answer, and the fact is not controverted, that the plaintiff, on the eighth day of December 1847, became indebted to the defendant as trustee in a large sum, by borrowing, as is alleged in the answer, in pursuance of a provision in the indenture of settlement, a portion of the principal of the trust fund. This sum the plaintiff has never repaid, and the defendant now interposes by way of set-off to the claim of the plaintiff, for the interest and income on the trust property, the debt which he owes to the trust fund. If this debt is now due, it cannot be doubted that it constitutes a decisive answer to the plaintiff's claim. He is not the sole beneficiary under the trust created by the indenture. The *jus disponendi* of the trust fund is not vested in him. He is only a *cestui que trust*, entitled to the interest and income during the term of his own life. On his decease, the heirs at law of his deceased wife become the *cestuis que trust*, entitled to receive the whole of the trust property then remaining in the hands of the trustee. It is obvious, therefore, that the failure of the plaintiff to pay to the trustee the sum borrowed by him will impair the principal of the trust fund, to the injury of those who, ultimately, on the death of the plaintiff, will become the sole and absolute beneficiaries, by virtue of the provisions in the deed of settlement. Under such circumstances, the plaintiff cannot come into a court of equity, asking that his own equitable rights and interests shall be protected and enforced, and at the same time refuse to perform that which in equity and good conscience is required of him, in order to secure the just claims of those who are to succeed him as *cestuis que trust* under the same instrument which he sets up as the basis of his title to equitable relief. The fundamental principle that he who asks equity must do equity is an insuperable objection to the enforcement by this court of the claim set out in the plaintiff's bill.

Nor is it any answer to this ground of defence that the loan of money by the defendant to the plaintiff out of the principal of the trust fund was expressly authorized under a provision of the indenture of settlement, and that the defendant can in no

event be held liable for any breach of duty in making such loan, by those who may become entitled to the property on the decease of the *cestui que trust* for life. Even if this be so — a point on which we express no opinion — it does not in any degree strengthen the plaintiff's equity, or his right to maintain this bill. The duty of a court of equity, in a case like the present, cannot be properly discharged by a narrow view of the interests of the parties to this suit only. The question is not merely between the plaintiff and the defendant — whether the former is entitled to recover and the latter bound to pay. The court is bound to look beyond the rights of those immediately interested in the subject matter of the suit, and to take care that the trust fund is protected from loss, and preserved, as far as possible, unimpaired for those who will be ultimately entitled to it. A court of equity will not turn *cestuis que trust* in remainder over to the personal responsibility of a trustee, to obtain a remedy for his neglect or misconduct, or that of a tenant for life, when it has means of redress within its reach by which a trust fund can be restored or kept unimpaired. *Fuller* v. *Knight*, 6 Beav. 205.

It is urged, however, in behalf of the plaintiff, that the defendant has no legal debt which he can allege by way of set-off to the plaintiff's claim to recover the income on the trust fund, because the contract for the loan of money and the note given therefor were made more than six years prior to the commencement of this suit, and that both are barred by the statute of limitations. Gen. Sts. *c.* 155, § 1. We are strongly inclined to the opinion that if, on the facts stated in the bill and answer, it was apparent that the debt due from the plaintiff to the defendant as trustee came fairly within the operation of the statute, so that no action could be maintained upon it by the defendant, he could not avail himself of it in answer to the plaintiff's claim to recover interest on the trust fund. Sitting as a court of equity, we do not give effect to the statute of limitations merely by analogy to the rule of law. The statute operates *suo vigore*, as a positive rule, and governs cases in which equitable relief is sought with like force and effect as actions at law. The maxim

*æquitas sequitur legem* embraces the provisions of statute as well as the rules of the common law. A court of equity cannot disregard or dispense with any obligation which the established principles of law impose. 1 Story on Eq. § 64. *Farnam* v. *Brooks*, 9 Pick. 242. *Johnson* v. *Ames*, 11 Pick. 182. Nor does it seem to us that the operation of the statute of limitations could be avoided by any supposed equitable lien, in favor of the defendant as trustee, on the life interest of the plaintiff in the trust fund, or by the relation of trustee and *cestui que trust* which subsists between the parties to this suit.

But it is unnecessary to express a decided opinion on these points, because it seems to us to be clear that the debt which the plaintiff owes to the defendant is not barred by lapse of time, but that it is taken out of the operation of the statute of limitations by the understanding and agreement set forth in the answer concerning the payment of the interest which should accrue from time to time on the plaintiff's note in the hands of the defendant. Taking the averment in the answer to be true, as we are bound to do on this hearing, the legal effect of the agreement between the plaintiff and his wife and the defendant was, that the interest on the debt due from the plaintiff should be deemed to be paid as it fell due, and should be regarded as so much of the income paid over to the wife of the plaintiff by the defendant. In other words, the substance of the understanding between the parties was, that in order to avoid the trouble of receiving interest on the note from the plaintiff and paying the same immediately back again to the plaintiff's wife, or on her order to the plaintiff, the formality of such payments should be dispensed with, but that the respective rights of the parties, the *cestuis que trust* and the trustee, should remain unaffected by the omission of such formality, and the interest on the note and the income of the fund should both be regarded as paid, although the amount in money was not actually passed from one to the other as interest, and paid back again as income. Under this agreement, the omission by the defendant to collect the income from the plaintiff is wholly immaterial. Equity regards that as done which is agreed to be done. The

defendant, by virtue of this agreement with the *cestuis que trust*, was authorized to pay the interest on the note of the plaintiff by indorsing the amount thereof semi-annually on the note according to its tenor, and to credit himself with the same amount as so much income paid over to the *cestuis que trust;* to the plaintiff's wife during her life, and after her decease to the defendant. This agreement the plaintiff cannot now set aside. The defendant having acted on the strength of it, and omitted to collect the interest on the note in pursuance of an express stipulation, has a right to insist that it shall be carried out in good faith. According to a just interpretation of its terms, the plaintiff must be deemed to have made payments on the note from time to time, as the interest fell due, up to the commencement of this suit, and thereby, according to the well settled doctrine, to have acknowledged the debt and renewed his promise within six years.            *Bill dismissed.*